AO 133 (Rev. 9/89) Bill of Costs

# United States District Court

**DISTRICT OF CONNECTICUT**

BISHOP, ET AL
V.
NATIONAL, ET AL

**BILL OF COSTS**

Case Number: 300CV00256 (CFD)

Judgment having been entered in the above entitled action on September 22, 2003 against the plaintiffs,
the Clerk is requested to tax the following as costs:

| | |
|---|---|
| Fees of the Clerk | $ _____ |
| Fees for service of summons and subpoena | _____ |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | _____ |
| Fees and disbursements for printing | _____ |
| Fees for witnesses (itemize on reverse side) | _____ |
| Fees for exemplification and copies of papers necessarily obtained for use in the case | _____ |
| Docket fees under 28 U.S.C. 1923 | 5.00 |
| Costs as shown on Mandate of Court of Appeals | _____ |
| Compensation of court-appointed experts | _____ |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 | _____ |
| Other costs (please itemize) Fees for removal to federal court | 150.00 |
| Costs requested in Court of Appeals | 542.52 |
| (Bill of Costs still pending;) See attached  TOTAL  $ | 697.52 |
| Bill of Costs | |

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.

## DECLARATION

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill was mailed today with postage prepaid to:
John F. Wynne, Jr., Buckley & Wynne, 685 State Street, New Haven, CT 06511-6509

Signature of Attorney: _____

Name of Attorney: William H. Clendenen, Jr.

For: the defendant, National Health Insurance Co.     Date: October 22, 2003
Name of Claiming Party

Costs are taxed in the amount of _____ and included in the judgment.

_____     By: _____     _____
Clerk of Court           Deputy Clerk           Date





UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

OLIVER BISHOP, III and
OLIVER BISHOP, IV

PLAINTIFF-APPELLEES

V.                                                                          DOCKET NO. 02-9032

NATIONAL HEALTH INSURANCE
CO.

DEFENDANT-APPELLANT         SEPTEMBER 25, 2003

ITEMIZED AND VERIFIED BILL OF COSTS

Counsel for the defendant, National Health Insurance Co., respectfully submits, pursuant to Rule 39(c) of the Federal Rules of Appellate Procedure the within bill of costs and requests the Clerk to prepare an itemized statement of costs taxed against the plaintiffs and in favor of the defendant for insertion in the mandate.

Docketing Action..................................................................$105.00

Costs of printing appendix (necessary copies 12)..................$100.68

Costs of printing brief (necessary copies 12).......................$151.56

Costs of printing reply brief (necessary copies 12)................$185.28

TOTAL COSTS                                                     $542.52

I, William H. Clendenen, Jr., as authorized attorney for the defendant, National Health Insurance Co., having knowledge of the facts, verify that the costs set forth above are correct and have been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

                                      William H. Clendenen, Jr. (ct#04261)
                                      CLENDENEN & SHEA, LLC
                                      P.O. Box 301
                                      New Haven, CT 06502
                                      Tel. No. 203/787-1183
                                      Fax No. 203/787-2847

Subscribed and sworn to before me on this 25 day of September, 2003.

                                      NOTARY PUBLIC
                                      My Commission Expires Sept. 30, 2005

CERTIFICATION:

This is to certify that a copy of the foregoing was mailed postage prepaid to John F. Wynne, Jr., Esq., Buckley & Wynne, 685 State St., New Haven, CT 06511 on the 25 day of September, 2003.

CLENDENEN & SHEA, LLC

2

27 Whitney Avenue
New Haven, CT 06510
203.776.6000 / Fax 787.2276
www.DocuPrintandImaging.com

# DOCUPRINT
## & IMAGING
### Digital Graphics ▪ Printing ▪ Copying

# INVOICE

| INVOICE NUMBER | INVOICE DATE |
|---|---|
| 35689 | 03/18/2003 |

*Complete Printing & Graphics Services*

High Speed Copying            Short Run Full Color Printing
Legal Document Services       Large Format Color Posters
Trial Exhibits - B/W & Color  HP Certified Print Center
DTP & Graphic Design          Business Stationery
Oversized Copies - Up to 36" Wide   Carbonless Forms
Complete Mailing Services     Envelopes
Full Color Laser Copies       Labels
MAC & PC Digital Services     Pick-up & Delivery
Digital Color Output from Disk    25+ Years of Experience

**BILL TO:**
Clendenen & Shea, LLC
400 Orange Street
New Haven, CT 06511

**THIS IS YOUR INVOICE. NO OTHER BILL WILL BE RENDERED.**

| TERMS | CUSTOMER PHONE | CUSTOMER CONTACT | PURCHASE ORDER # | CUSTOMER SERVICE REP. |
|---|---|---|---|---|
| Net 30 Day | (203) 787-1183 | Janet Marlowe | | Kate |

| QUANTITY | DESCRIPTION | | TOTAL |
|---|---|---|---|
| 128 | Legal Copies - National | 163.84 | |
| | Copy Stock | | |
| | Copies on 8.5 x 11 | | |
| | 16 Originals, 1 Side To 1 Side, Collated/Stapled | | |
| | 2,048 Copies | | |
| | * Paper       67# Card Stock | 6.80 | |
| | Velo Binding  VELO BINDING 1" | 76.50 | |
| | | 247.14 | 247.14 |

RECEIVED BY _[signature]_

| SHIP VIA | SUB-TOTAL | TAX RATE % | TAX | FREIGHT CHARGES | DEPOSIT | AMOUNT DUE |
|---|---|---|---|---|---|---|
| Our Van | 247.14 | 6.000 | 14.83 | 0.00 | 0.00 | 261.97 |

Thank You

**A service charge of 1% per month (18% per year) will be charged on all balances unpaid after 30 days.
Please return pink copy with your payment.**

# DOCUPRINT
## & IMAGING
### Digital Graphics · Printing · Copying

27 Whitney Avenue
New Haven, CT 06510
203.776.6000 / Fax 787.2276
www.DocuPrintandImaging.com

**INVOICE**

| INVOICE NUMBER | INVOICE DATE |
|---|---|
| 34243 | 12/13/2002 |

**BILL TO:**
Clendenen William P.C.
400 Orange Street
New Haven, CT 06511

### Complete Printing & Graphics Services

| | |
|---|---|
| High Speed Copying | Short Run Full Color Printing |
| Legal Document Services | Large Format Color Posters |
| Trial Exhibits - B/W & Color | HP Certified Print Center |
| DTP & Graphic Design | Business Stationery |
| *Oversized Copies - Up to 36" Wide | Carbonless Forms |
| Complete Mailing Services | Envelopes |
| Full Color Laser Copies | Labels |
| MAC & PC Digital Services | Pick-up & Delivery |
| Digital Color Output from Disk | 25+ Years of Experience |

**THIS IS YOUR INVOICE. NO OTHER BILL WILL BE RENDERED.**

| TERMS | CUSTOMER PHONE | CUSTOMER CONTACT | PURCHASE ORDER # | CUSTOMER SERVICE REP. |
|---|---|---|---|---|
| Net 30 Day | (203) 787-1183 | Janet Marlowe | | Kate |

| QUANTITY | DESCRIPTION | | TOTAL |
|---|---|---|---|
| 15 | Legal Copies - National Copy Stock<br>Copies on 8.5 x 11<br>125 Originals, 1 Side To 1 Side, Collated/Stagger<br>1,875 Copies | 150.00 | |
| | * Paper — 67# Card Stock | 3.20 | |
| | Velo Binding — VELO BINDING 1" | 36.00 | |
| | | 189.20 | 189.20 |
| 16 | Legal Copies - National Copy Stock<br>Copies on 8.5 x 11<br>72 Originals, 1 Side To 1 Side, Collated/Stagger<br>1,152 Copies | 92.16 | |
| | * Paper — 67# Card Stock | 3.40 | |
| | Velo Binding — VELO BINDING 1" | 38.25 | |
| | | 133.81 | 133.81 |

RECEIVED BY _____

| SHIP VIA | SUB-TOTAL | TAX RATE % | TAX | FREIGHT CHARGES | DEPOSIT | AMOUNT DUE |
|---|---|---|---|---|---|---|
| Pick-up | 323.01 | 6.000 | 19.38 | 0.00 | 0.00 | $ 342.39 |

Thank You    A service charge of 1% per month (18% per year) will be charged on all balances unpaid after 30 days.
Please return pink copy with your payment.

MANDATE

CTDC/NHCT
00-CV-256
DRONEY

# United States Court of Appeals
## FOR THE
## SECOND CIRCUIT

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 22nd day of September, two thousand and three.

Before:  Hon. John M. Walker, Jr., *Chief Judge*
Hon. Richard J. Cardamone
Hon. Sonia Sotomayor
*Circuit Judges*

FILED
SEP 2 2 2003
Roseann B. MacKechnie, Clerk
SECOND CIRCUIT

Docket No. 02-9032

---

OLIVER BISHOP, III and OLIVER BISHOP, IV,

Plaintiffs-Appellees,

v.

NATIONAL HEALTH INSURANCE COMPANY,

Defendant-Appellant.

---

Appeal from the United States District Court for the District of Connecticut.

This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel.

On consideration whereof, it is hereby ORDERED, ADJUDGED and DECREED that the judgment of said district court be and it hereby is VACATED and REMANDED in accordance with the opinion of this Court.

RECEIVED
OCT 17 2003
CLENDENEN ____ LLC

FOR THE COURT:
ROSEANN B. MACKECHNIE, Clerk

Arthur M. Heller
Motions Staff Attorney

A TRUE COPY
Roseann B. MacKechnie, CLERK

by Tammy Martinez
DEPUTY CLERK

ISSUED AS MANDATE:
10/14/03

344 F.3d 305                                                                                       Page 1
(Cite as: 344 F.3d 305)

**H**

United States Court of Appeals,
Second Circuit.

Oliver BISHOP, III and Oliver **Bishop**, IV,
Plaintiffs-Appellees,
v.
NATIONAL HEALTH INSURANCE
COMPANY, Defendant-Appellant.

**Docket No. 02-9032.**

Argued May 5, 2003.
Decided Sept. 22, 2003.

Insured, a motorist who required surgery after automobile accident and who admitted to having engaged in conduct violative of state drunk driving statute, brought diversity action against insurer seeking coverage under hospital surgical expense insurance policy. The United States District Court for the District of Connecticut, Christopher F. Droney, J., 2002 WL 519712, denied insurer's summary judgment motion on ground that policy's intoxication exclusion was ambiguous. Insurer appealed. The Court of Appeals, Cardamone, Circuit Judge, held that: (1) fact that drunk driving statute did not explicitly define "intoxication" did not render intoxication exclusion ambiguous; (2) exclusion did not require adjudication under drunk driving statute nor showing that intoxication was cause of loss; and (3) insured's status as minor did not preclude application of exclusion.

Vacated and remanded.

West Headnotes

**[1] Insurance ☞1835(2)**
217k1835(2) Most Cited Cases

Under Connecticut law, ambiguous exclusionary provision is construed in manner most beneficial to insured.

**[2] Insurance ☞1808**
217k1808 Most Cited Cases

When examining insurance contract for ambiguity, court looks to situation before it, not to other possible or hypothetical scenarios; ambiguity must exist in policy language as applied to facts before court.

**[3] Insurance ☞2461**
217k2461 Most Cited Cases

Insured motorist who admitted to engaging in conduct violative of Connecticut drunk driving statute at time he sustained operable injuries, and whose blood alcohol content was measured at .165, was within hospital surgical expense insurance policy's intoxication exclusion, which defined intoxication as "level of blood alcohol content that is specified in the laws defining intoxication in the state where the loss or cause of loss occurred," even though statute did not explicitly purport to define "intoxication"; statute impliedly defined term by proscribing driving "while under the influence of intoxicating liquor" or "while such person has ... blood alcohol content [of .10 or more]." C.G.S.A. § 14-227a(a) (1998).

**[4] Insurance ☞2461**
217k2461 Most Cited Cases

Under Connecticut law, hospital surgical expense insurance policy's intoxication exclusion, which applied to "any loss incurred while [insured was] legally intoxicated," did not require that insured who admitted engaging in conduct violative of state drunk driving statute actually be adjudicated under that statute, and did not require insurer to prove that insured's intoxication had actually caused accident resulting in injuries for which coverage was denied. C.G.S.A. § 14-227a.

**[5] Insurance ☞2461**
217k2461 Most Cited Cases

Under Connecticut law, insured's status as minor did not preclude application of hospital surgical expense insurance policy's intoxication exclusion.
*306 William H. Clendenen, Jr., New Haven, Connecticut (Kevin C. Shea, Clendenen & Shea, LLC, New Haven, Connecticut, of counsel), for Defendant-Appellant.

John F. Wynne, Jr., New Haven, Connecticut (Buckley & Wynne, New Haven, Connecticut, of counsel), for Plaintiffs-Appellees.

Before: WALKER, Chief Judge, CARDAMONE,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

344 F.3d 305
(Cite as: 344 F.3d 305)

Page 2

and SOTOMAYOR, Circuit Judges.

CARDAMONE, Circuit Judge.

On December 1, 1997 defendant National Health Insurance Company (National) issued an Individual Hospital Surgical Expense Policy to plaintiff Oliver Bishop, III (Bishop III), on which his son, Oliver Bishop, IV (Bishop IV), as a member of his family, was insured. The policy provided coverage for certain medical expenses for Bishop III and the members of his family, including his son. But the policy excluded coverage for "any loss incurred while [the insured was] legally [i]ntoxicated," defining "[i]ntoxicated" as "a level of blood alcohol content that is specified in the laws defining [i]ntoxication in the state where the loss or cause of loss occurred."

On March 14, 1998 Bishop IV, then 19 years old, purchased a case of beer and a half-pint of liquor at a store in New Haven, Connecticut, and proceeded to a party in Guilford, Connecticut, where he consumed these alcoholic beverages. Earlier in the evening, Bishop IV had made arrangements with a designated driver to take him home after the party and this occurred at 3:00 a.m. on March 15. Within minutes after his arrival at his home, Bishop IV got into his pickup truck and drove away, soon overtaking the designated driver. Almost 20 minutes from the time he left his home, at 3:20 a.m., Bishop IV lost control of his vehicle and drove off the road, colliding with a stone wall and two trees. He was treated for his injuries at Yale-New Haven Hospital, where medical personnel determined that his blood alcohol content was .165 percent alcohol by weight. Citing the intoxication exclusion in its policy, National refused to pay the $242,235.45 in medical expenses plaintiffs incurred as a result of Bishop IV's accident.

In the district court the parties agreed that Bishop IV's conduct violated Connecticut General Statutes § 14-227a(a) (1998), the Connecticut drunk driving law. That law prohibited driving with a blood alcohol content exceeding .10 percent alcohol by weight. Nonetheless, the Bishops insisted that the intoxication exclusion in their policy with National should not apply because the exclusion is ambiguous. The district court agreed and granted summary judgment in plaintiffs' favor, ordering National to pay the Bishops' medical expenses.

We recognize that equitable considerations involved in weighing, on the one hand, the effect on the insurer of paying the claims against, on the other hand, the substantial medical costs incurred by the insured for his son's injuries, might counsel agreement with the district court's conclusion. But, equity cannot be unbounded, without risking a throwback to those days in Sixteenth Century England when--in light of the vast discretion exercised by the Chancellor--it was said of the English Court of Chancery that equity is as long as the Chancellor's foot, be it long or short, on such an uncertain measure, so goes equity. *See* John Selden, Table Talk 43 (Frederick Pollock, ed.1927), *cited in* Zechariah Chafee, Jr. & Sidney Post Simpson, Cases on Equity 6 n.8 (2d ed.1946). Here, of course, the exclusion from coverage is contained in the written contract of insurance between the parties. *307 It is written in plain and, we conclude, unambiguous language, and is not subject therefore to being construed on equitable principles. We must vacate.

DISCUSSION
I Principles of Interpretation of an Insurance Policy

We review a grant of summary judgment *de novo,* standing in place of the district court and applying the same principles of law to the facts in the case as it does. *See Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 100 (2d Cir.1997). Summary judgment is appropriate only if the court, resolving all ambiguities and drawing all reasonable inferences in favor of the non-moving party, determines there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Alibrandi v. Fin. Outsourcing Servs., Inc.,* 333 F.3d 82, 85 (2d Cir.2003) (per curiam). The district court had jurisdiction over this case based on diversity of citizenship--the Bishops are Connecticut domiciliaries and National is incorporated and has its principal place of business in Texas. *See* 28 U.S.C. § 1332(a). The parties agree the substantive law of Connecticut applies.

[1] Under Connecticut law, we interpret an insurance policy as we would a contract, with the ultimate goal of determining the intent of the parties regarding the extent of coverage the insured expected to receive and what the insurer agreed to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

344 F.3d 305  
(Cite as: 344 F.3d 305)

Page 3

provide as disclosed by the terms of the policy. *See Simses v. N. Am. Co. for Life and Health Ins.,* 175 Conn. 77, 394 A.2d 710, 713-14 (1978); *Marcolini v. Allstate Ins. Co.,* 160 Conn. 280, 278 A.2d 796, 798 (1971). An insurer may escape its obligation to pay an insured for a loss otherwise covered in the policy by identifying a specific clause that expressly excludes the loss. *O'Brien v. John Hancock Mut. Life Ins. Co.,* 143 Conn. 25, 119 A.2d 329, 331 (1955). If an exclusionary provision is ambiguous so that an average policyholder of ordinary intelligence can reasonably read the policy as both favoring and disallowing coverage, we construe the clause in a manner most beneficial to the insured, i.e., in favor of coverage and against the insurer. *See Heyman Assocs. No. 1 v. Ins. Co. of State of Pa.,* 231 Conn. 756, 653 A.2d 122, 130 (1995); 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 22:31 (3d ed.2001). This rule of construction is followed because the insurer as the drafter of the insurance contract bears the burden of clarity, and because the insured must have notice of the types of risk his policy covers and excludes. *See Hansen v. Ohio Cas. Ins. Co.,* 239 Conn. 537, 687 A.2d 1262, 1265 (1996). "If the terms of the policy are clear and unambiguous," however, then its language "must be accorded its natural and ordinary meaning." *Heyman Assocs. No. 1,* 653 A.2d at 130. Connecticut's highest court instructs courts to refrain from "import[ing] ambiguity where the ordinary meaning leaves no room for ambiguity." *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of Ill.,* 247 Conn. 801, 724 A.2d 1117, 1121 (1999).

II Alleged Ambiguity in the National Policy

Plaintiffs advance, and the district court accepted, the proposition that the intoxication exclusion is unclear, ambiguous and unintelligible as written. The district court pointed to the policy's definition of intoxication, which refers to the level of blood alcohol content that is specified in the laws defining intoxication in Connecticut, and reasoned that the word intoxication, as used in the policy, is ambiguous because no Connecticut statute clearly defines intoxication by reference to a blood alcohol content level. This would seem a *308 curious proposition, since the Connecticut drunk driving law, which Bishop IV admits to violating, defines the offense as driving "(1) while under the influence of intoxicating liquor or any drug or both, *or* (2) while such person has an elevated blood alcohol content," which, in turn, is defined (for the purposes of this section) as blood alcohol content of 0.10 percent or more by weight. Conn. Gen.Stat. § 14-227a(a) (emphasis added). [FN1]

FN1. In 2002, the threshold blood alcohol content under this statute became 0.08 percent.

Undeterred by this admission, plaintiffs insist that the statute does not provide an explicit legal definition of intoxication. It is their contention that the statute only describes drunk *driving,* but not intoxication *per se,* and thereby leaves open the possibility that other legal definitions of intoxication may apply. The Bishops point out that Connecticut law contains other definitions of intoxication that do not refer to blood alcohol content, and that even the blood alcohol content referenced in § 14-227a(a) has changed over time--from .15 percent to .10 percent in 1971, and to .08 percent in 2002. *See* 1971 Conn. Pub. Acts 318; Conn. Gen.Stat. § 14-227a(a) (2002).

Outside of § 14-227a(a), the district court identified the following definitions of intoxication in Connecticut law: (1) "a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body," Conn. Gen.Stat. § 53a-7 (2001) (discussing intoxication as a means of negating criminal intent); (2) "mental or physical functioning ... substantially impaired as a result of the use of alcohol or drugs," Conn. Gen.Stat. § 17a-680(13) (1992) (intoxication in the context of provision of addiction services by the State); and (3) "an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies," which may be found "[w]hen it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when these or similar symptoms result from the use of liquor and are manifest," *Sanders v. Officers Club of Conn., Inc.,* 196 Conn. 341, 493 A.2d 184, 190 (1985) (interpreting definition of intoxication in Connecticut Dram Shop Act, Conn. Gen.Stat. §

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

344 F.3d 305  
(Cite as: 344 F.3d 305)

Page 4

30-102).

All of these other competing definitions of intoxication, the Bishops declare, make the application of National's intoxication exclusion so uncertain and ambiguous that it is unintelligible and therefore unenforceable. The district court agreed, holding there is no clear statutory definition of intoxication that references blood alcohol level, and the policy exclusion is therefore ambiguous and must be construed in favor of the insured.

III Our View of Intoxication Exclusion

[2] Plaintiffs' arguments misperceive the relevant principles of law governing the interpretation of a contract. When examining an insurance contract for ambiguity, a court must look to the situation before it, and not to other possible or hypothetical scenarios. *See Coregis Ins. Co. v. Am. Health Found.,* 241 F.3d 123, 129 (2d Cir.2001) (applying Connecticut law); *Kelly v. Figueiredo,* 223 Conn. 31, 610 A.2d 1296, 1298-99 (1992). That is, the ambiguity must exist in the policy language as applied to the facts before us, not in the abstract. An ambiguity does not exist by virtue of the fact that one of a contract's provisions could be ambiguous under some other circumstances. Rather, *309 an ambiguity exists if a court could reasonably interpret the insurance policy before it either to warrant coverage of the particular loss in question or to exclude coverage. *See Heyman Assocs. No. 1,* 653 A.2d at 130 ("[W]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must ... be adopted."). If the policy could arguably be read to cover the behavior in question, the court is to resolve the ambiguity in favor of the insured. However, when an insured's behavior unquestionably falls within an insurance exclusion, a court cannot invalidate the exclusion simply because it might be ambiguous in another situation. *See Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co.,* 259 Conn. 527, 791 A.2d 489, 501 (2002).

[3] The question, then, is not whether National's policy is ambiguous in a hypothetical sense, but whether there is any question that Bishop IV was intoxicated within the policy's definition when his accident occurred. If the language of the insurance exclusion yields conflicting possible conclusions about whether Bishop IV was "intoxicated," then we would construe the policy in favor of coverage.

As an initial matter, we think § 14-227a(a) is the relevant statute defining intoxication as used in National's policy. Although the statute does not explicitly define intoxication, it clearly provides such a definition by implication in setting forth the boundaries of the crime it prohibits. The law proscribes driving "while under the influence of intoxicating liquor." Conn. Gen.Stat. § 14-227a. "Under the influence" as stated in the law is commonly understood to mean "intoxicated," and the Connecticut courts have enshrined this understanding in their case law. *See Coble v. Maloney,* 34 Conn.App. 655, 643 A.2d 277, 282 (1994); *State v. McKenna,* 11 Conn.App. 122, 525 A.2d 1374, 1379-81 (1987).

In light of this, it would make little sense to call the crime "driving while under the influence" "driving while intoxicated" if the limits set forth in the law did not define "under the influence" or "intoxication." The fact that the provision does not explicitly purport to define intoxication does not mean that its clear implication for the legal limit of sobriety cannot be used as a general standard. On the contrary, we think it appropriate in this case to look to § 14-227a(a) to interpret the policy's reference to intoxication as defined by the laws of Connecticut which reference blood alcohol content. [FN2]

> FN2. Conn. Gen.Stat. § 14-227g further indicates that § 14-227a defines intoxication. Section 14-227g prohibits those under the age of 21 from driving with a blood alcohol content exceeding .02 percent. Unlike § 14-227a, however, § 14-227g does not mention the term "under the influence," indicating that such a low level of alcohol content is not the threshold for drunkenness, even though it is prohibited among minors. Even if .02 percent were a possible alternative definition of intoxication, Bishop IV surely met it the night of his accident.

Plaintiffs further contend that § 14-227a(a) cannot clearly define intoxication because it uses two alternative definitions of intoxication--§

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

344 F.3d 305
(Cite as: 344 F.3d 305)

Page 5

14-227a(a)(2) that references blood alcohol content and § 14-227a(a)(1) that refers simply to being under the influence of liquor or drugs. But the fact that these alternative definitions exist is irrelevant because the law makes plain that an individual is *always* liable for driving under the influence if his or her blood alcohol content by weight exceeds the .10 percent limit. Connecticut case law, relied on by the plaintiffs and cited by the district court, confirms this by describing the difference between the two definitions: for § 14-227a(a)(2), a blood alcohol *310 content of .10 percent *per se* establishes intoxication, while for § 14-227a(a)(1), blood alcohol content is evidence, but is not necessary to establish intoxication. *See State v. Gilbert,* 30 Conn.App. 428, 620 A.2d 822, 827 (1993), *aff'd,* 229 Conn. 228, 640 A.2d 61 (1994); *Coble,* 643 A.2d at 282. While a lesser blood alcohol content may support a finding of intoxication, it is not necessary for such a finding. Far from making the appropriate definition ambiguous, the statute makes very certain that regardless of non-numerical definitions, a sufficient blood alcohol content always triggers liability under the statute. Since Bishop IV's blood alcohol level indisputably exceeded the threshold, he was intoxicated within the definition set out in § 14-227a(a).

Moreover, even if the policy were unclear as to which law it intended to use as a benchmark for intoxication, the exclusion would still apply because Bishop IV's blood alcohol level is evidence that he was intoxicated under any definition in any of the Connecticut statutes. The policy of reading ambiguity in favor of the insured stems from an interest in giving insureds notice of exclusions, so that they do not unwittingly lose coverage because of confusing or misleading language in insurance contracts. It may not be persuasively argued that an ordinarily intelligent person reading National's policy would believe that a loss occurring when the insured had consumed enough alcohol to reach a .165 percent blood alcohol level was a covered risk under the terms of the policy.

IV Remaining Arguments

[4] Plaintiffs submit that even if § 14-227a(a) provides the relevant standard for defining intoxication, evidence of the blood alcohol level alone is not enough, and an adjudication is necessary before Bishop IV can be found to have been intoxicated. The Bishops, however, admitted in their submissions that Bishop IV was in violation of § 14-227a(a). Since one cannot be driving while under the influence unless one is intoxicated under the legal definition in § 14-227a(a), the Bishops' admission is tantamount to an admission of intoxication. Further, the insurance policy National issued does not require an adjudication, but simply sets as a benchmark for inebriation the level set forth in the statutes, and Connecticut case law holds that evidence of the requisite blood alcohol content alone establishes intoxication under the relevant statute, *see Gilbert,* 620 A.2d at 827.

In a related argument, the Bishops additionally contend that National has the burden not only of showing that Bishop IV was intoxicated at the time of his accident, but that his intoxication caused the accident. We see no justification for requiring such a showing. The policy excludes any loss incurred *while* the insured was intoxicated and does not suggest that the loss must have been proximately caused by the intoxication. Further, plaintiffs stipulated that Bishop IV's blood alcohol content was "at least a contributing factor" in his accident.

[5] Finally, plaintiffs raise policy considerations in support of their position. They assert that Connecticut public policy precludes a minor from falling within the legal definition of intoxication under the terms of the insurance policy. Plaintiffs advance this argument by reminding the court that intoxication exemptions generally only apply where intoxication was "knowing and voluntary." *See* Russ & Segalla, *supra,* § 143:81. The Bishops cite *Ely v. Murphy,* 207 Conn. 88, 540 A.2d 54, 57 (1988), for the proposition that minors lack the capacity to be voluntarily intoxicated, and reason that therefore the intoxication exclusion cannot apply to minors like Bishop IV.

*311 Such a reading stands Connecticut case law on its head. In *Ely,* the Connecticut Supreme Court considered whether an adult who provided alcohol for a minor at a party could be liable for that minor's killing of another in a drunk driving accident. The court questioned whether the alcohol provider's liability was cut off by the common law doctrine that "no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured [another] person." *Id.* at 56-57. The

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

344 F.3d 305 \
(Cite as: 344 F.3d 305)

Page 6

Supreme Court of Connecticut held that since minors are "incompetent by reason of their youth and inexperience to deal responsibly with the effects of alcohol," *id.* at 57, they do not have the legal capacity to consume alcohol responsibly, and their voluntary consumption of alcohol does not automatically cut off the liability of a social host who provides the minors with alcohol under the common law doctrine. *Id.* at 58.

That is vastly different from saying that minors cannot as a matter of law become voluntarily drunk and need not face the consequences of their own actions while intoxicated. We believe plaintiffs' proposed reading of the case is not only inaccurate, but also unreasonable. We think it highly unlikely that Connecticut public policy seeks to encourage underage drinking and driving by making minors or their parents exempt from the consequences of their actions when so conducting themselves. As a consequence, we conclude that Bishop IV's conduct falls within National's intoxication exclusion and thus the insurer need not provide coverage for the loss incurred.

### CONCLUSION

Accordingly, the judgment is vacated and remanded to the district court with instructions to grant summary judgment in favor of defendant National.

344 F.3d 305

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works